## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FREDRICK JAMES HALLOWELL, JR.,

      Plaintiff,

v.                                            CIV No. 14-675 JCH/CG

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Plaintiff Fredrick Hallowell Jr.'s *Motion for Reversal and Remand for Further Proceedings,* with *Plaintiff's Brief in Support of Motion for Remand and Reversal for Further Proceedings* (the "Motion"), filed on January 30, 2015, (Docs. 26 & 27); *Defendant's Response to Plaintiff's Motion to Reverse and Remand the Administrative Agency's Decision* ("Response"), filed on April 29, 2015, (Doc. 31); and *Plaintiff's Reply Brief* ("Reply"), filed on May 15, 2015. (Doc. 32). United States District Judge Judith C. Herrera referred this case to United States Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 23).

On May 19, 2011, Mr. Hallowell filed an application for supplemental security income and disability insurance benefits with the Social Security Administration, alleging disability beginning on December 31, 2008. (Administrative Record ("AR") 138–46, 147–53). His application was denied on July 26, 2011, (AR 53–55, 78–82), and upon reconsideration on October 5, 2011. (AR 84–86, 87–90). Mr. Hallowell filed his request for a hearing on November 7, 2011, (AR 91–93); a hearing was held on December 5,

2012, before Administrative Law Judge ("ALJ") Ann Farris. (AR 27–52). Mr. Hallowell and Pamela Bowman, an impartial vocational expert, testified at the hearing. (*Id.*).

The ALJ issued her opinion on December 17, 2012, and determined that Mr. Hallowell was not disabled under 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 8–24). Mr. Hallowell filed an application for review with the Appeals Council, which was summarily denied on May 28, 2014, (AR 1–5), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Hallowell complains that the ALJ committed reversible, legal error by failing to: (i) properly weigh several of the medical opinions in the record; and (ii) properly consider the opinion of his mother, thereby formulating an erroneous residual functional capacity finding. The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ improperly evaluated medical evidence in the record, the Court recommends that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

## I.    Standard of Review

The standard of review in a Social Security appeal is whether the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision

2

stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118

(10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004);

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously

review the entire record but should neither re-weigh the evidence nor substitute its

judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at

1118.

## II.   Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a

person establishes a disability when he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step

sequential evaluation process has been established for evaluating a disability claim.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the

first four steps of the sequential evaluation process, the claimant has the burden to show

that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and either (3) his impairment(s) meet or equal one

of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform

his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

*v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At the fifth step, the burden of proof

shifts to the Commissioner to show that the claimant is able to perform other work in the

national economy, in light of his residual functional capacity ("RFC"), age, education, and

work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399

F.3d at 1261.

### III.    Background

Mr. Hallowell applied for disability benefits alleging that he was disabled due to

bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), insomnia, back

and knee problems, and learning difficulties. (AR 179).

At step one, the ALJ determined that Mr. Hallowell had not engaged in substantial

gainful activity since December 31, 2008. (AR 13). At step two, the ALJ concluded that

Mr. Hallowell was severely impaired with PTSD, bipolar disorder, and degenerative disc

disease of the lumbar spine at L5-S1. (AR 14). At step three, the ALJ concluded that

none of Mr. Hallowell's impairments, solely or in combination, equaled one of the listed

impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and

416.926. (AR 14–15).

The ALJ proceeded to step four, and first made an RFC finding that Mr. Hallowell

could perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except

that he could make only simple work-related decisions with very few workplace changes,

could not have any interaction with the public, and could have only occasional and

superficial interaction with coworkers. (AR 15–18). The ALJ decided that Mr. Hallowell

was precluded from doing any of his past relevant work in light of the RFC finding. (AR

18).

4

At step five, the ALJ inquired whether Mr. Hallowell would be able to perform any other work existing in significant numbers in the national economy. (AR 18–19). The ALJ noted that Mr. Hallowell was 29 years old on the alleged disability onset date, and classified as a "younger individual" in accordance with the Regulations. (AR 18). The ALJ also determined that Mr. Hallowell had at least a high school education and English-language skills. (*Id.*).

The vocational expert testified at the hearing that an individual with Mr. Hallowell's same age, education, work experience, and RFC could perform the jobs of hand cleaner, electrical assistant, and laundry folder. (AR 49–50). The vocational expert stated that those jobs existed in significant numbers in the national economy. (*Id.*). After finding the vocational expert's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony. (AR 19). The ALJ concluded that because Mr. Hallowell was capable of performing work existing in significant numbers in the national economy, he was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (*Id.*).

## IV.    Analysis

Mr. Hallowell contends that the ALJ committed error by formulating an RFC determination unsupported by the law, because the ALJ failed to properly evaluate his limitations caused by his mental impairments. Specifically, Mr. Hallowell argues that the ALJ improperly weighed and rejected the opinions of Lisa DiNenno, CNP and Mercedes DeCubas, PhD, and did not properly consider the third-party function report completed by his mother. The Commissioner responds that the ALJ properly evaluated those opinions and considered them in her formulation of the RFC. The Commissioner further contends that the RFC finding is supported by substantial evidence and is not legally

erroneous, and asks the Court to affirm the final decision denying disability benefits.

A.    *Mr. Hallowell's Challenges to the RFC Finding*

The ALJ found at step two that Mr. Hallowell's PTSD and bipolar disorder were severe impairments, but that they did not significantly impair his functioning. Mr. Hallowell argues the ALJ did not consider all of the evidence of his mental impairments when the ALJ determined his RFC. Mr. Hallowell contends that certain medical opinions in the record assign more restrictive limitations due to his mental impairments than the limitations that the ALJ found, and that the ALJ failed to properly evaluate those medical opinions. The Commissioner responds that the ALJ did not commit legal error because she properly considered the medical evidence and weighed the medical opinions concerning Mr. Hallowell's mental impairments.

1.    *The ALJ's RFC Finding*

At step four, the ALJ considered Mr. Hallowell's impairments and their effects on his functioning, and then made an RFC finding. The RFC finding is a function-by-function assessment, based on how the claimant's functional physical and mental limitations, resulting from her impairments, affect his ability to work. *See* 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); *see also* Social Security Rulings ("SSR") 96-8p, 1996 WL 374184, *1, 3 (July 2, 1996). The RFC represents the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. *Id.* at *7.

The RFC is based on all relevant evidence in the record, including information about the individual's symptoms, reports of daily activities, lay evidence, medical history,

6

medical signs and laboratory findings, and any medical source statements submitted by a treating or other acceptable medical source. 96-8p, 1996 WL 374184 at *5, 7. The ALJ considers and evaluates the claimant's statements of his subjective complaints and descriptions and observations of his functional limitations, including pain and fatigue. *See* 20 C.F.R. §§ 404.1529, 404.1545(e), 416.929, 416.945(e); *see generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The ALJ also takes into account any statements about what the claimant can still do that have been provided by medical and other sources, whether or not they are based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513, 416.913. Additional evidence from medical sources that are not "acceptable medical sources," and information from nonmedical sources, may also be used to evaluate the severity and functional effects of a claimant's impairments. SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006).

2.    *Analysis of Nurse DiNenno's Treatment Notes and Opinions*

The ALJ considered the medical opinion of Nurse DiNenno, Psychiatric Nurse Practitioner, in making the RFC finding, but ultimately assigned it little weight for the reasons that Nurse DiNenno is not a an acceptable medical source and she gave an opinion on an issue reserved for the Commissioner. (AR 18, 19). Mr. Hallowell argues that Nurse DiNenno's treatment notes and opinions were improperly rejected, but the Commissioner contends that the ALJ permissibly evaluated and discounted them pursuant to the Regulations.

The record shows that Nurse DiNenno treated Mr. Hallowell for bipolar disorder and PTSD as early as July 2011. (AR 336). Mr. Hallowell presented for treatment, and

7

complained of sleep disturbance, anxiety, depression, anger, and PTSD symptoms, appearing agitated with loud speech. (*Id.*). He described his anxiety and depression as a five on a scale of 10, and his irritability as a 10 on a scale of 10. (*Id.*). Nurse DiNenno continued him on 1000 milligrams of Depakote and increased his dose of Trazodone to 150 milligrams. (*Id.*). Mr. Hallowell returned to Ms. DiNenno on August 12, 2011, and reported that his sleep problems had improved as a result of the Trazodone and still experienced irritability, but that his mood was stable. (AR 335).

On January 9, 2012, Nurse DiNenno opined that Mr. Hallowell "is not able to work at this time." (AR 434). She noted that despite undergoing medication changes and daily psychosocial rehabilitation classes, Mr. Hallowell's symptoms had not remitted, and that his most recent attempts to work had been unsuccessful due to "treatment resistant bipolar mania symptoms." (*Id.*).

The ALJ considered Nurse DiNenno's opinion and gave it limited weight, for the reasons that the ultimate determination of disability is reserved to the Commissioner, and Nurse DiNenno is not a practicing psychologist or psychiatrist and therefore not an acceptable medical source. (AR 17, 18). Mr. Hallowell argues that the ALJ impermissibly rejected Nurse DiNenno's opinion and treatment notes because the ALJ failed to properly evaluate them pursuant to the Regulations.

First, Mr. Hallowell contends that the ALJ impermissibly rejected Nurse DiNenno's opinion for the reason that Nurse DiNenno is an unacceptable medical source. The Rulings make clear that opinions from non-acceptable medical sources, such as nurse practitioners, are important in determining the severity and limiting effects of a properly-diagnosed condition. SSR 06-03p, 2006 WL 2329939, at *2. When considering

what weight, if any, to afford a medical opinion or other evidence from such a source, the ALJ should consider the same six factors typically used to evaluate the weight of an acceptable medical source's opinion. *Id.* at *4. These factors include: (i) length of the treatment relationship and the frequency of examination; (ii) nature and extent of the treatment relationship; (iii) supportability of the opinion by reference to relevant evidence; (iv) how well the source explains the opinion; (v) the source's medical specialization; and (vi) any other factor which tends to support or refute the opinion. 20 C.F.R. §§ 404.1527(c) and 416.927(c); SSR 06-03p, 2006 WL 2329939 at *2–3.

The ALJ should explain the weight given to opinions from these other sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. SSR 06-03p, 2006 WL 2329939 at *6; *see also Bowman v. Astrue*, 511 F.3d 1270, 1274 (10th Cir. 2008). This duty is commensurate with the ALJ's more generalized duty to "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

The Court therefore agrees with Mr. Hallowell's argument that the ALJ should have weighed Nurse DiNenno's opinion in consideration of the six factors described above. It was not proper to reject her opinion for the reason that she was not an "acceptable medical source." The Court will now turn to whether the second reason the ALJ gave—that Nurse DiNenno's opinion was on an issue reserved to the Commissioner—was a proper reason for discounting her opinion outright.

Mr. Hallowell argues that Nurse DiNenno's opinion should not have been rejected on the basis that it was on an issue ultimately reserved for the Commissioner. Whether

9

an individual is disabled under the Act is a determination reserved to the Commissioner. SSR 96-5p, 1996 WL 374138, at *2 (July 2, 1996). However, the opinions of any medical or other source, even on issues reserved for the ALJ such as a claimant's RFC or disability, must never be ignored. SSR 96-5p, 1996 WL 374138, at *5–6. "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *3.

A medical opinion is any opinion that reflects judgments about the nature and severity of the claimant's impairment, including his symptoms, diagnosis, and prognosis, and "what you can still do despite [your impairments], and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2). Mr. Hallowell points out that Nurse DiNenno's opinion regarding his disability was based on her observations of how he was reacting to his psychiatric medication and his compliance with therapeutic treatment. Nurse DiNenno concluded that despite these treatment mechanisms, Mr. Hallowell's symptoms and limitations had not abated, at least to the extent necessary to work on a regular and continuous full-time basis. Nurse DiNenno noted in her opinion that Mr. Hallowell's most recent attempt to work had been thwarted by his resistant bipolar mania symptoms.

The Court finds that Nurse DiNenno provided a "true medical opinion," defined by the Tenth Circuit in *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008), because it contained her "judgment about the nature and severity" of Mr. Hallowell's limitations and "information about what activities he could still perform." Thus, it should have been evaluated as such by the ALJ pursuant to the six factors described above, and could not

10

have been rejected outright for the sole reason it was on an issue reserved for the Commissioner.

Here the ALJ gave only two reasons for rejecting Nurse DiNenno's opinion—that Nurse DiNenno is an unacceptable medical source and her opinion was on an issue reserved to the Commissioner. However, neither of those explanations were permissible reasons for discounting the opinion outright. The Regulations require the ALJ to evaluate the opinions of nurse practitioners in consideration of the six deference factors. The Commissioner now argues that the ALJ implicitly rejected the opinion because it was unsupported by medical evidence and inconsistent with other substantial evidence. However, the Court must evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is impermissible for the Court to engage in post hoc rationalization. *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004).

The ALJ's failure to provide a clear and substantiated reason for rejecting Nurse DiNenno's opinion constitutes reversible error since the record is not "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The Court is left with no guide by which to assess the ALJ's decision to reject Nurse DiNenno's opinion. This error was neither harmless nor of minor importance, especially in light of the fact that Nurse DiNenno is a mental health care professional who treated Mr. Hallowell on at least several occasions for his serious mental impairments. On remand, the ALJ should consider Nurse DiNenno's opinion and treatment notes in conjunction with the six factors established in 20 C.F.R. §§ 404.1527 and 416.927 for weighing medical opinions, and provide specific reasons supported by substantial

evidence for the weight she ultimately affords Nurse DiNenno's opinion.

## V.        Recommendation

The ALJ's RFC assessment in this case was erroneous, and therefore the Court recommends that the case be remanded to the Commissioner for further administrative proceedings consistent with the discussion herein. The Court does not decide any other issue raised by Mr. Hallowell on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE RECOMMENDED** that Mr. Hallowell's *Motion for Reversal and Remand for Further Proceedings,* (Doc. 26), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Court's Proposed Findings and Recommendations.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).   **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE